(97 South. 200)

No. 25242.

SANDERS v. MITCHELL et al.

(June 30, 1923.)

*(Syllabus by Editorial Staff.)*

1. **Vendor and purchaser** ⊜⟩244—Sales; evidence held to show grantee of one obtaining deed surreptitiously was not innocent purchaser.

Where deal in which deed was placed in escrow was not consummated, but grantee's agent surreptitiously obtained the deed and conveyed to another, evidence *held* to show that his grantee was not an innocent purchaser.

2. **Vendor and purchaser** ⊜⟩229(I) — Sales; delay in recording deed held a suspicious circumstance, putting purchaser on guard.

That deed to valuable property was not placed on record for nearly a month after its execution was an unusual and suspicious circumstance, which should have placed one purchasing on the faith of such deed on his guard.

Appeal from Third Judicial District Court, Parish of Claiborne; J. E. Reynolds, Judge.

Suit by Lee Aylmer Sanders against J. H. Mitchell and others. From a judgment for plaintiff, defendant Joe Manziel appeals. Affirmed.

T. H. McEachern, of Homer, for appellant.

McClendon, Morelock & Seals, of Homer, for appellee.

ROGERS, J. This is a suit to set aside two alleged mineral deeds, one from plaintiff to J. H. Mitchell, and the other from Mitchell to Joe Manziel. Plaintiff alleges that defendant Mitchell obtained the deed from him through fraud, deceit, and misrepresentation and without consideration, and that Manziel acquired the property from Mitchell with full knowledge of the fraud perpetrated. No answer was filed by Mitchell. Manziel, in his answer, denies knowledge of any fraud and avers that he was a purchaser in good faith from the records and acquired the property for a valuable consideration. Judg-ment was in favor of plaintiff, canceling the deeds, and defendant Manziel has appealed.

[1] It appears from the record that plaintiff executed a deed of sale of certain mineral rights to J. H. Mitchell, represented by one George Day as his agent. This deed, bearing date June 27, 1921, was placed in escrow with the Planters' Bank, at the town of Haynesville, pending examination of the title. For some reason, which is not explained, the deal failed of consummation, and on July 12, 1921, plaintiff and said Day called at the bank, and, on their joint request, the papers were returned to them. Day surreptitiously carried away the deed, after having pretended to tear it up while in the bank building. Plaintiff, believing the deed to have been destroyed, gave no further thought to the matter until some time thereafter, when his attention was directed to the recordation of the document, together with the deed from Mitchell to Manziel, in the conveyance records of the parish of Claiborne. This suit followed.

Manziel has utterly failed to make good his defense that he was an innocent purchaser upon the records for a valuable consideration. In his reasons for judgment, filed in the record, the district judge says, among other things, that he was "fully convinced" that Manziel "participated in a crooked and dishonest deal; that he was fully aware of all the facts and circumstances connected with the deal, and was, in fact, a party to it." This is harsh criticism, but we cannot say it is unwarranted.

The deed from plaintiff bears date June 27, 1921, and the one from Mitchell to Manziel is dated July 6, 1921. The latter deed is incorrectly dated, since it was executed some time after its purported date. Doubtless for the purpose of having it appear that Manziel purchased the property before learning of the fraud perpetrated by Day, this erroneous dating was persisted in by the

parties, even after their attention had been called thereto by the notary who executed the deed. On its face the instrument was executed by Mitchell; as a matter of fact, Mitchell was not present when it was executed, and his name was signed to the instrument by Day in the presence of Manziel. It is true there appears in the record, introduced over plaintiff's objection, a power of attorney from Mitchell to Day, authorizing him to sell the property, without specifying any particular purchaser; but this mandate was not used in effecting the sale to Manziel, which purports to be a straight-out sale from Mitchell, whose name, as stated, was signed by Day. Why the power of attorney was not used is not explained. It may have been the parties felt that a deed executed in Mitchell's name offered greater security from attack than one executed by Day in his quality of agent, or it may have been merely a queer mental twist that influenced them in adopting a devious method of performing an act which it was otherwise in their power to perform, at least on its face, in accordance with the forms of law. But, whatever may have been the underlying motives inducing the execution of the deed in the manner stated, the transaction itself, pretermitting the question of its legality, is one of many peculiar acts and circumstances tending to show the fraudulent character of the dealings between Manziel and Day.

The deed from Mitchell to Manziel recites a cash consideration of $3,500. This is not a true statement of the facts, as testified to by Manziel; the actual consideration being $2,800, which it is significant to remark was the price set forth in the deed from plaintiff to Mitchell. When interrogated concerning the alleged consideration of his deed, and the manner of its payment, the testimony of Manziel is confused, and, to say the least, entirely unsatisfactory. The substance of the testimony appears to be that the pay-

ment was not made entirely in cash, but by a note for $100, a check for $400 on the First National Bank of Homer, La., and the remainder, something over $2,000, in actual cash, which according to the witness he paid over to Day, no one else being present, in a corner of the said bank building. Manziel claimed to have brought this large amount of cash with him from Ft. Smith, Ark., his home, and to have carried it around in his pockets for several days in his various journeyings about the oil fields in Claiborne parish—a most unlikely story. The testimony of Day was not taken, as he appears to have left the scene of operations immediately after the execution of the deed to Manziel.

[2] The defense of "innocent purchaser from the records" utterly fails for the reason that there was no record upon which to rest the defense. The deed from plaintiff to Mitchell, purloined by Day, had not been placed of record at the time of the sale to Manziel. As a matter of fact it was turned over by Day to Manziel at the time of the execution of the purported sale from Mitchell to the latter. Both deeds were filed simultaneously by Manziel himself in the clerk's office of the parish of Claiborne, on July 21, 1921, and were recorded in the conveyance records of said parish, one immediately following the other. The fact that a deed to valuable property, dated June 27, 1921, was not placed of record until July 21, 1921, nearly a month after its execution, was an unusual and suspicious circumstance, and one which should have placed a party dealing upon the faith of such deed upon his guard. It is in the record, however, by the testimony of two witnesses, Cooper and De Voss, that Manziel, who had been traveling around that country in company with Day, was told, in the presence of Day, that Day only had an option, which had expired, and that he had never

paid Sanders, the plaintiff, anything for the property; Manziel's reply being that it made no difference, as long as it was on record.

Without further comment upon the facts of the case, it is sufficient to say that it is impossible from an examination of the record to reach any other conclusion than that Manziel and Day were parties to a dishonest transaction, entered into for the purpose of illegally divesting plaintiff of his property.

Judgment affirmed.